IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AEGIS DEFENSE SERVICES, LLC, ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHENEGA-PATRIOT GROUP, LLC, ) <br> Defendant. ) <br> ) | Case No. 1:15-cv-998 |

## MEMORANDUM OPINION

This removed action is essentially a trade secrets dispute between direct competitors for a large government contract. At issue on plaintiff's Motion to Remand is whether there is a federal question presented sufficient to support removal where, as here, the causes of action alleged in the complaint are state law claims, but one of the alternative remedies plaintiff seeks is an order disqualifying defendant as a bidder in the federal contract competition in which the parties are participants.

As the matter has been fully briefed and argued, it is now ripe for disposition. For the reasons that follow, the case must be remanded to state court, and the request for costs and expenses must be denied.

I.

The facts pertinent to resolution of the remand motion may be succinctly summarized. Plaintiff Aegis Defense Services, LLC, ("Aegis") and defendant Chenega-Patriot Group, LLC, are government contractors competing for a large government contract with the U.S. Department of State, namely the Worldwide Protective Services Contract 2 ("WPS 2"). The winning contractor in the WPS 2 competition is obligated to provide security and support services to the

1

State Department at various locations around the world, including sensitive hot-spots like Afghanistan and Iraq.

The parties' dispute arises from an incident involving plaintiff's former employee Gary Pease. While employed with plaintiff, Pease worked on strategies to secure for plaintiff the award of government contracts, including the WPS 2 contract. In this capacity, Pease had access to plaintiff's trade secrets and other proprietary information. Given his position with plaintiff and his access to plaintiff's proprietary information, Pease was required to sign a confidentiality agreement to safeguard plaintiff's proprietary information and to prevent Pease's use of this information should he cease working for plaintiff. In fact, Pease recently left plaintiff's employ and began working for defendant, both individually and through his consulting company. Pease's duties with defendant included providing services in connection with defendant's bid on the WPS 2 contract. After Pease's departure from Aegis, plaintiff became concerned that Pease may have taken plaintiff's trade secret information with him to his employment with defendant. Accordingly, plaintiff retained a forensic examiner who determined that Pease had in fact copied plaintiff's trade secret information from his Aegis computer before leaving his employment with plaintiff. Given this, plaintiff filed the instant complaint in state court.

This is not the first time the parties have squared off in court; plaintiff previously sued defendant for misappropriation of trade secrets and tortious interference with contract in D.C. Superior Court based on precisely the same facts plaintiff alleges here. *See Aegis Defense Servs. v. Pease, et al.*, No. 2015-ca-003971 (D.C. Super. Ct.). The parties settled that lawsuit and plaintiff voluntarily dismissed the case with prejudice. Yet, plaintiff now claims that defendant fraudulently induced this settlement. Specifically, plaintiff alleges that defendant fraudulently misrepresented "that [defendant] has not and will not use Aegis confidential information on WPS

projects," which was a representation made as part of the settlement agreement. Comp. ¶ 74; Comp. Ex. B ¶ 3.

The complaint in this case alleges three state law causes of action: (i) tortious interference with the confidentiality agreement between plaintiff and Pease, (ii) misappropriation of plaintiff's trade secrets and other proprietary information, and (iii) fraudulent inducement of the D.C. Superior Court settlement agreement. As part of the prayer for relief, the complaint seeks damages, immediate emergency and permanent injunctive relief, and "a finding that Chenega-Patriot is disqualified from participating in the WPS 2 solicitation and enjoined from participating in the WPS 2 solicitation." Comp. pp. 17-18. This requested finding, defendant argues, presents a question of federal law. Accordingly, defendant filed a Notice of Removal on August 6, 2015, asserting federal question jurisdiction as the sole basis for removal. Plaintiff now seeks remand on the grounds that federal question jurisdiction does not exist to support removal.

## II.

Analysis of the federal question jurisdiction issue properly begins with the well-settled, and venerable, "well-pleaded complaint" rule. As a leading treatise explains, "[t]he well-pleaded complaint rule stands for the proposition that the court, in determining whether the case arises under federal law, will look only to the claim itself and ignore any extraneous material." 13D Wright & Miller, Federal Practice and Procedure § 3566 (3d ed.). Thus, not every federal question lurking in a case gives rise to federal jurisdiction; the federal question must appear on the face of a well-pleaded complaint. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). A corollary to the well-pleaded complaint rule is that the existence of a federal *defense* is insufficient to give rise to federal question jurisdiction for removal purposes. *See*

3

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); Wright & Miller, *supra*, § 3566. Rather, the focus of the well-pleaded complaint rule is exclusively on the allegations necessary to establish plaintiff's right to relief. Thus, in order for federal question jurisdiction to exist (i) federal law must create the cause of action, or (ii) the plaintiff's right to relief must necessarily depend on the resolution of a substantial federal question. *See Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 219 (4th Cir. 2001).

It is also important to note that a defendant removing a case to federal court bears the burden of establishing federal subject matter jurisdiction. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994). Nor is this an easy burden to carry; removal jurisdiction is disfavored and strictly construed. *See id.*; *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (noting a "strong presumption" against removal jurisdiction). Moreover, as the Fourth Circuit has observed, "state law complaints usually must stay in state court when they assert what appear to be state law claims." *Lontz v. Tharp*, 413 F.3d 435, 440 (4th Cir. 2005). In other words, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151.

These principles, applied here, point convincingly to the necessity to remand this case to state court. To begin with, the complaint asserts three causes of action that are exclusively state law claims that do not depend on federal law. This alone is typically sufficient to preclude federal question removal under the well-pleaded complaint rule. *See, e.g., Harless v. CSX Hotels*, 389 F.3d 444, 450 (4th Cir. 2004) (noting the absence of federal question jurisdiction in a case in which "the claims in the Complaint are couched purely in terms of state anti-discrimination law").

Defendant seeks to overcome this result by noting that one of the requested alternative remedies for misappropriation of trade secrets and tortious interference with contract is a request

4

that defendant be disqualified from the WPS 2 bidding contest. In defendant's view, this remedy presents a federal question sufficient to support federal jurisdiction because disqualification of a bidder in a federal contract competition is exclusively a federal remedy and federal question.

Defendant's argument fails for several reasons. First, it is doubtful that defendant is correct in contending that defendant's disqualification from the WPS 2 contract competition is a matter solely within the province of a federal court. There is no reason a state court, on finding that defendant has misappropriated plaintiff's trade secrets and confidential information, could not order as a remedy an injunction precluding defendant from using the misappropriated information for any purpose, including the WPS 2 contract competition.[1] And if the record were to show that defendant's WPS 2 submission made use of, or benefited in any way from, the purloined confidential information, then a state court injunction precluding defendant's use of the trade secret information, a remedy well within a state court's power to impose in a trade secrets case, might well operate as the functional equivalent of precluding defendant from participation as a WPS 2 bidder. Of course, where a bid utilizing misappropriated trade secrets has already been submitted and federal law or regulation prevents its withdrawal or modification,[2] a state court should be cognizant of the federal rule in crafting an appropriate remedy. But even if federal law precludes a state court from ordering withdrawal of a bid in certain situations, an issue neither necessarily reached nor decided here, nothing would prevent

---

[1] *See* Restatement (Third) of Unfair Competition § 44 cmt. c ("Injunctive relief is often appropriate in trade secret cases to insure against additional harm from further unauthorized use of the trade secret."); *accord Dionne v. Se. Foam Converting & Packaging*, 240 Va. 297 (1990) (affirming an injunction against the use of plaintiff's trade secrets in violation of a confidentiality agreement).

[2] Indeed, federal regulation appears to limit withdrawal of bids in certain situations, such as when an award has already been made. *E.g.*, 48 C.F.R. § 15.208(e) ("Proposals may be withdrawn by written notice at any time before award.").

the state court from awarding plaintiff an alternative remedy, such as damages. *See, e.g.,* Restatement (Third) of Unfair Competition § 44 cmt. b ("In many trade secret cases, both injunctive and monetary relief are appropriate.").

Even assuming for the sake of argument that the complaint's alternative remedy of defendant's disqualification from the WPS 2 contract competition is exclusively a federal remedy, defendant's removal nonetheless fails the well-pleaded complaint rule because the claim that such a remedy is beyond the authority of a state court is simply a defense to that remedy and, as such, is clearly insufficient to support federal question jurisdiction. *See Mottley*, 211 U.S. at 152. If a federal defense to a state *right of action* is insufficient to support federal question jurisdiction, the same must be true of a federal defense to a *remedy* for a state claim. Put differently, the point is that defendant cannot rescue its removal to federal court by focusing on a request for an alternative remedy rather than on a right of action. As the Supreme Court has long recognized, the "federal nature of the right" is the "decisive" factor in federal question jurisdiction analysis. *Gully v. First Nat'l Bank*, 299 U.S. 109, 116 (1936). And here, none of the rights asserted in the complaint are of a federal nature. Thus, where, as here, a plaintiff requests an alternative remedy that, in defendant's view, is solely the province of federal law, that argument is, at most, a federal defense and does not furnish a basis for federal question removal. Instead, the appropriate forum for raising such a federal defense is the state court in which the state claims are filed.

Defendant's reliance on the Fifth Circuit's decision in *Medina v. Ramsey Steel*, 238 F.3d 674 (5th Cir. 2001), does not alter the conclusion reached here. There, the plaintiff initially filed a discrimination lawsuit based solely on Texas law. In his amended complaint, however, the plaintiff in *Medina* sought damages that were only authorized under the federal Age

Discrimination in Employment Act of 1967 (ADEA). Accordingly, the court construed the plaintiff's complaint as proceeding under the ADEA such that the plaintiff's complaint asserted a federal cause of action. Indeed, the Fifth Circuit's analysis in *Medina* stressed the fact that the plaintiff had "a choice between federal and state law claims" and elected to seek federal remedies instead of proceeding "on the exclusive basis of state law." *Id.* at 680. Here, unlike *Medina*, there is no such choice, as there is no federal statute providing causes of action analogous to those asserted here under state law. Although at oral argument defendant pointed to the existence of an administrative proceeding through which an aggrieved contractor can seek to disqualify a bid based on misappropriation of proprietary information,[3] this procedure is not a federal cause of action analogous to those asserted under state law; it is a fully distinct (and, on defendant's theory, *exclusive*) means of seeking disqualification. But because it is not a federal cause of action, plaintiff here, unlike the plaintiff in *Medina*, has no "choice between federal and state law claims," and defendant's analogy to *Medina* fails.

Defendant attempts a second bite at the apple by invoking an "independent corollary" to the well-pleaded complaint rule, namely, complete preemption. *See Caterpillar*, 482 U.S. at 393 (characterizing complete preemption as such). Under this corollary, federal question jurisdiction exists where a federal statute so completely preempts some area of state law that it converts state law actions into federal claims for purposes of the well-pleaded complaint rule.[4] *Id.* In order to

---

[3] *See* Olin Corporation – Reconsideration, B-252154, 1993 WL 197660 (Comp. Gen. June 3, 1993); *see also* LLH & Assocs., LLC, B-232094, 2006 CPD ¶ 52, 2006 WL 547999 (Comp. Gen. Mar. 6, 2006).

[4] As a jurisdictional doctrine with the transformative force to turn a state law action into a federal law action, complete preemption differs from other forms of preemption that, if present, would constitute a mere defense to a state claim and would not suffice as a basis for federal question removal. *See Rosciszewski v. Arete Assocs.*, 1 F.3d 225, 231 (4th Cir. 1993) ("Generally, federal

find complete preemption, "the congressional intent that state law be entirely displaced must be clear in the text of the statute." *Lontz*, 413 F.3d at 441. In fact, the bar for complete preemption is so high that the Supreme Court has only ever held that it applies in three areas: (i) actions under § 301 of the Labor Management Relations Act,[5] (ii) actions under § 502 of ERISA,[6] and (iii) actions for usury under 12 U.S.C. §§ 85-86, part of the National Bank Act.[7]

Rather than point to a federal statute that completely preempts actions affecting federal procurement, defendant contends that provisions of the Code of Federal Regulations are the source of the preemption. Defendant does not, however, cite a single case in which any court has held or suggested that the Code of Federal Regulations, rather than a federal statute, can give rise to complete preemption of state law.[8] Moreover, to find that federal regulations completely preempt state law would be inconsistent with Fourth Circuit precedent, which clearly identifies *congressional intent*, not agency intent, as the key factor for such a finding. *See Lontz*, 413 F.3d at 441. Even assuming that agency action can completely preempt state law, defendant points to no language in the federal procurement regulations or in the statute under which these regulations are promulgated indicating any intent, by Congress or the agency, to preempt state law actions affecting federal procurement completely.

---

preemption is a defense to a plaintiff's action, and as such, 'it does not appear on the face of a well-pleaded complaint.'").

[5] *Avco Corp. v. Aero Lodge*, 390 U.S. 557, 559-60 (1967).

[6] *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 66-67 (1987).

[7] *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 3-4 (2003).

[8] It is worth noting that a contrary conclusion might run afoul of the constitutional prohibition against delegation of legislative authority to administrative agencies. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 487 (2001) (Thomas, J., concurring) (noting that there might be situations in which "the significance of the delegated decision is simply too great" to allow Congress to delegate the decision to an administrative agency).

For the foregoing reasons, the complaint here does not fulfill the first means of satisfying the well-pleaded complaint rule, namely that federal law create the causes of action alleged. Defendant's objection to a state court's authority to grant plaintiff's requested alternative remedy is a federal defense insufficient to support federal jurisdiction, and defendant fails to identify a federal statutory source of complete preemption, such that plaintiff's complaint could be construed as actually stating federal claims rather than state claims.

Defendant next suggests that there is a substantial federal question embedded in this state law dispute, such that federal question jurisdiction exists. Under the "substantial federal question" doctrine, a federal court has federal question jurisdiction if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons v. Darue*, 545 U.S. 308, 314 (2004). Notably, this doctrine only applies to "a small class of cases." *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir. 1996). And importantly, the first part of this inquiry focuses on the *right* to relief, not the availability of any particular remedy. *See Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986) ("a case may arise under federal law 'where the vindication of a *right* under state law necessarily turn[s] on some construction of federal law'") (emphasis added).

Defendant frames the alleged substantial federal question in this case as "whether the alleged misuse of confidential information from another competitor (if proven) in the current context is grounds for disqualification from a federal procurement." Def't Br. at 12. This, however, is a question about the availability of a specific remedy, not the existence of plaintiff's right to relief. Even assuming a state court could not issue an injunction precluding defendant from using plaintiff's trade secret information in the WPS 2 contract competition, plaintiff's right

to relief for other remedies under state law, such as money damages, remains unaffected. Accordingly, because the federal question in this case goes to *remedial power* as opposed to a *right to relief*, removal is inappropriate under the substantial federal question doctrine.[9]

In a final attempt to invoke federal jurisdiction, defendant seeks to avail itself of federal common law. Certainly, there are "a few areas" involving "uniquely federal interests" in which federal common law preempts state law due to a significant conflict between the federal interest and the state law. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504, 507 (1988). And, of course, claims founded upon federal common law give rise to federal question jurisdiction. *See Illinois v. Milwaukee*, 406 U.S. 91, 100 (1972). But defendant's argument has several fatal flaws. First, defendant in essence wishes to use federal common law as a defense to plaintiff's requested alternative remedy, which, as discussed *supra*, does not satisfy the well-pleaded complaint rule.[10] Indeed, there is no plausible reason to require a uniform federal rule of decision as to the substance of plaintiff's claims, which address matters traditionally reserved to the states and completely unrelated to any right or liability of the federal government. Moreover, defendant

---

[9] Defendant cites *Fredrico v. Lincoln Military Housing*, 901 F. Supp. 2d 654 (E.D. Va. 2012), as support for its argument. *Fredrico*, however, is of doubtful authority. *See Ching v. Aila*, No. 14-cv-253, 2014 WL 4216051, at *8 (D. Haw. Aug. 22, 2014) (criticizing *Fredrico* as inconsistent with well-established principles of federal question jurisdiction). In any event, *Fredrico* is readily distinguishable. The central holding of *Fredrico* is that "there should be a federal forum in which to litigate controversies arising on federal enclaves—even when there is concurrent jurisdiction, the complaint involves state law claims, and a state forum also exists—in order to prevent state judicial interference with matters likely to involve substantial federal interests." *Fredrico*, 901 F. Supp. 2d at 672 (internal quotations omitted). There is no clear indication that the allegations in this case arise from activity in a federal enclave, and, as discussed *infra*, there are no substantial federal interests at stake.

[10] In its brief, defendant identifies the "substantial conflict" necessary to trigger federal common law as between "Virginia's standards for injunctive relief" and "the State Department contracting officer's standards for responsive bids." Def't Br. at 16. This suggests that the conflict goes to remedy rather than right, rendering any applicable federal common law rule a mere defense that is insufficient to support federal question jurisdiction.

fails to establish that a federal common law rule is appropriate for the substance of plaintiff's claims in this case because no uniquely federal interests are at stake.

Defendant first argues that this case implicates the obligations to, and rights of, the United States under its contracts. No doubt, this is a uniquely federal interest sufficient to give rise to a federal common law rule. *See Clearfield Trust Co. v. United States*, 318 U.S. 363, 366-67 (1943) (holding that federal common law applies to the United States' rights and duties on commercial paper). Still, even assuming, *arguendo*, that this interest is implicated, federal common law generally only applies in cases implicating this interest when the United States is a party to the case. *See Bank of Am. v. Parnell*, 352 U.S. 29, 34 (1956) (holding that *Clearfield Trust* generally does not apply to suits between private parties). Because that is not so here, federal common law cannot apply on the basis of this interest alone.

Defendant next argues that this case implicates the uniquely federal interest in "procurement for the purposes of national defense." Def't Br. at 15. In support of this argument, defendant relies on the Supreme Court's decision in *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988), and the Ninth Circuit's decision in *New SD v. Rockwell Int'l Corp.*, 79 F.3d 953 (9th Cir. 1996). Neither case carries the day for defendant.

In *Boyle*, 487 U.S. at 511, the Supreme Court held that federal common law governed a dispute between two private parties, one a government contractor and the other a private citizen bringing a tort action. There, the plaintiff's son was a Marine helicopter pilot who died in the crash of a helicopter that the defendant manufactured. As the Supreme Court explained,

> [t]he imposition of liability on Government contractors will directly affect the terms of Government contracts: either the contractor will decline to manufacture the design specified by the Government, or it will raise its price. Either way, the interests of the United States will be directly affected.

11

*Id.* at 507. Importantly, *Boyle* stands for a very narrow proposition: Federal common law applies "whenever the allegedly tortious decisions attributed to the contractor are actually discretionary decisions made by the government itself." *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 352 (4th Cir. 1998). Here, *Boyle* is entirely inapposite because plaintiff seeks to impose liability on defendant for allegedly tortious activity wholly apart from any federal government decision.

In light of this reading of *Boyle*, defendant's reliance on the Ninth Circuit's *New SD* case must likewise fail. In *New SD*, 79 F.3d at 954, a subcontractor sued a prime contractor for breach of contract arising from work for the Air Force. The Ninth Circuit found that removal to federal court was proper because "the construction of subcontracts, let under prime contracts connected with the national security, should be regulated by a uniform federal law." *Id.* at 955. This expansive employment of federal common law is inconsistent with the Supreme Court's *Boyle* decision, which held that the federal government's interest in exercising discretion in military procurement only gives rise to federal common law preemption of state law when the state law at issue would impose costs on the federal government's discretionary decisions.[11] *See Emory*, 148 F.3d at 352. *Boyle* does not stand for the proposition that federal common law must apply any time federal contractors working in national security have a private dispute. Rather, *Boyle*'s central message is that the federal government's discretionary decisions should be free from state-level regulation by a state tort system that might impose standards that conflict with federal standards. To reiterate, there is no reason to believe that defendant's allegedly tortious activity

---

[11] This and other flaws with the *New SD* decision have not heretofore gone unnoticed. *See, e.g., Woodward Governor Co. v. Curtiss Wright Flight Sys.*, 164 F.3d 123, 128 (2d Cir. 1999) (noting that far-removed subcontracts between private parties do not implicate uniquely federal interests); *Kormendi/Gardner Partners v. Surplus Acquisition Venture, LLC*, 606 F. Supp. 2d 114, 118 n.5 (D.D.C. 2009) (criticizing the *New SD* decision for "not meaningfully apply[ing] *Boyle*.").

was done at the direction of the federal government as part of the federal government's discretionary decision-making in the national security context. Hence, state law liability for defendant's allegedly tortious conduct does not create a substantial conflict with any uniquely federal interest.

In sum, federal common law has no place in this dispute. Not only does defendant likely want to wield federal common law as a defense against plaintiff's requested alternative remedy, which is insufficient to support federal question jurisdiction, but defendant also fails to show how this case implicates any uniquely federal interest that conflicts with state law so as to warrant imposing a uniform federal common law rule.

### III.

At this point, defendant has exhausted the jurisdictional arrows in its quiver without hitting the mark. But the task at hand is not yet complete. In addition to seeking remand, plaintiff requests that it be awarded costs and actual expenses under 28 U.S.C. § 1447(c), which permits an order remanding a case to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal."

Absent unusual circumstances, courts may award fees under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Supreme Court has made it clear that one of the policy goals underlying this fee shifting provision is "to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* at 140. Recognizing this goal, other courts in this district have concluded that reliance on non-controlling caselaw in the

absence of controlling Fourth Circuit precedent is generally sufficient to form an objectively reasonable basis for removal.[12]

Although the presence of an objectively reasonable basis for removal is a very close question in this case, defendant's citation to decisions that *arguably might* lend *some* support to defendant's argument for removal is sufficient to avoid the fee-shifting penalty under § 1447(c).

### IV.

For the foregoing reasons, plaintiff's Motion to Remand will be granted in part and denied in part. Specifically, this case will be remanded to the Circuit Court for Fairfax County, Virginia, and the request for costs and expenses will be denied.

An appropriate order will issue.

Alexandria, Virginia
September 29, 2015

/s/
T. S. Ellis, III
United States District Judge

---

[12] *See, e.g., Simpkins v. Sun Trust Mortg.*, No. 12-cv-264, 2013 WL 1966904, at *7 (E.D. Va. May 7, 2013); *Racetime Investments, LLC v. Moser*, No. 12-cv-860, 2013 WL 987835, at *5 (E.D. Va. Feb. 6, 2013); *Va. Beach Resort v. Certain Interested Underwriters*, 812 F. Supp. 2d 762, 768 (E.D. Va. 2012); *City of Chesapeake v. Clear Sky Car Wash, LLC*, No. 12-cv-195, 2012 WL 3866508, at *7 (E.D. Va. Sept. 5, 2012).